UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17CV-P183-TBR

AMERICO J. BROCK
A/K/A DOMINIQUE J. BROCK                                      PLAINTIFF

v.

SGT. JESSIE COONTS *et al*.                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff, Americo J. Brock A/K/A Dominique J. Brock, filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*.[1] This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss some of Plaintiff's claims and allow other claims to proceed for further development.

## I. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff was a convicted inmate at the Kentucky State Penitentiary (KSP) at the time of the events alleged in the complaint. He names the following KSP personnel as Defendants: Sgt. Jessie Coonts; Corrections Officer Ryan Inglish; Nurse Amanda Switzer; and Unit Administrators Michael Spindler and Troy Belt. He sues each Defendant in his or her official and individual capacities.

Plaintiff asserts that he was housed in a cell walk which he states was condemned and previously used to house death row inmates, even though he was not serving a death sentence. He states that he was placed there because he was given a "'Special Classification Status' due to extra-judicial disciplinary proceedings." He states that he was given only a pair of boxers and a

---

[1] This case originally was assigned to the Honorable Judge Greg N. Stivers. However, it was reassigned to the undersigned pursuant to this Court's General Order 2018-03 (DN 7).

"salvaged/unsanitary" mattress. He maintains that the cell has not been sanitized in 117 years, was visibly dirty, and did not have a water supply.

Plaintiff states that on January 21, 2017, Defendant Inglish walked up to his cell and "derogitorily refers to me as a 'Puerto Rican monkey,' in spiteful attempt to 'stage a fallout' (i.e. pick a fight) in objections to the racial-slander." Plaintiff asserts that he is of Hispanic descent. He states that he was "exhausted being I'm practically starved of meals and coincidentaly placed on a 'hunger-strike, status'" in violation of Kentucky Department of Corrections (KDOC) policies and procedures and that he demand to see a supervisor. According to the complaint, Defendant Inglish called Defendant Coonts, who conducted a "negligent' investigation," and that the two "conspiratorily cultivate a falsified allegation of an attempt at 'self-harm' []an absolute fabrication, as implied in the absence of a disciplinary - report" for such conduct.

Plaintiff states that he was then "seated quietly at my bed" and was "caught completely off guard" when "Sgt. Coonts yells sarcastic rhetoric ('Hey Spick-Head!) before unloading ½ canister of MK-9 pepperspray into my face and chest . . . area, causing temporary blindness and irritation, witch lasted a complete week, before finaly fading away." He states that "neither employee was faced w/ an immediate threat. I'm housed 'behind bars,' and 'practicaly naked,' for crying out loud!" He reports that "Its not until this point, incident is logged in '5 minute constant watch log,' and an 'apprehencion-team' is requested via inst. radio-system." Plaintiff states that he waited fifteen minutes for the Apprehension Team to arrive during which he was "undergoing multiple 'spasms' due to shock of MK-9 application, a newly administered chemical agent" under KDOC policies and procedures. He maintains that he does not know the names of the members of the Apprehension Team because they were wearing suit and helmets.

Plaintiff further states, "Its not untill 15 minutes later, that Im demanded to 'turn-around, and cuff-up!' Reluctantly, I comply, allowing handcuffs and shackles to be applied. Come this point, Im quite litaraly 'dragged' up a flight of stairs . . . ." He states that he was dragged to a shower "where Im pinned between a 'plexiglass shock-shield' and . . . a frigid brick wall.[]"

Plaintiff asserts that after another fifteen minutes of being pinned against the cold brick wall, Defendant Switzer arrived and "spitefully asks 'why must I continuously cater to this Spick?'" before being directed to check his ankle and wrist restraints, which Plaintiff contends were "entirely too tight!" He states that he was then dragged across the room to the shower. He states, "Whereas, as opposed to allowing me to take a 'civilized' shower, Im seated in a 'folding-chair' and quite literaly 'water-boarded' []a torturing-technique . . . . as apprehencion team applies 'shock-shield.'" He states that the corrections officers and supervisor "constantly makes rhetorics (further implication of malice)[.]" Plaintiff further states that Defendant Switzer "under Sgt. Coonts' supervision, literaly poors an entire 'tea-pitcher' of water . . . over my face witch causes me to assophicate/resusicate, on the water alone!" and that he was "practicaly begging Nurse Switzer to stop[.]" He maintains that he was commanded by Defendant Coonts to sit still or that he "may be 'sprayed again.'" He states, "Having choked/gagged on this water three times before finally 'giving in' (note: I felt I was 'near-death'!) Im quite literally 'dragged' from the shower, back across the room to frigid-cold brick wall, now soaking wet."

Plaintiff further reports that Defendant Switzer was then again directed to check his ankle and wrist restraints. He states that she "fails to note tightly applied matalic-restraints, [illegible] caused swelling[]." He states that he was then dragged down a flight of stairs and "practicaly thrown back in my cell[,] the 'Death-cell' . . ." and "housed on 5 minute constant watch a complete week before Im even offered a formal (civilized) shower." Plaintiff states that, seven

3

days after he was pepper sprayed, he was "escorted to the shower and allowed to Decontaminate myself of pepperspray, (MK-9) an extremely excruciating process, in witch pepperspray 're-activated,' again and again untill full cleaning."

Plaintiff states that he was preparing to defend himself in a disciplinary hearing. However, he states, "I wasn't even issued a disciplinary report in the first place! witch further implies my innocence." Plaintiff maintains that he filed a grievance which was handled by Defendants Belt and Spindler, "each of whom [were] Defendants in U.S. Dist. Court cases . . . . Further implication of 1st amendment Retaliation . . . in which Grievance #2017-02-039 exceeds nearly 3 months before 'informal resolution' is issued.'" He states that he moved immediately for a Grievance Committee hearing which was "delayed another 2 months." He maintains that the delays violated KDOC policies and procedures. Plaintiff reports that he then appealed to the Warden on grounds that Defendants Belt and Spindler retaliated against him in "effort to avenge" pending cases "in prolonging the Grievance-Process 'a complete 5 months!'" He states that the Warden took another two months to respond and that he then appealed to the KDOC Commissioner where he stated "as 'Grounds for appeal' the many retaliatory efforts made, to avenge" his pending U.S. District Court cases. He states, "However, each appeal is spitefully 'affirmed.'"

As relief, Plaintiff requests compensatory and punitive damages.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).  And this Court is not required to create a claim for Plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a

*pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

At the outset, the Court observes that the first page of Plaintiff's statement of the claim lists sixteen legal claims. In addition, Plaintiff inserts legal claims throughout the rest of his statement of the claim. Upon initial review, the Court is required to accept all factual allegations as true; however, it is not required to accept legal conclusions. *See Tackett*, 561 F.3d at 488. Because the claims listed by Plaintiff amount to legal conclusions, the Court will not address each legal claim and will address the claims that are supported by factual allegations as described below.

**A. Official-capacity claims**

Plaintiff sues all Defendants in their official capacities. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Defendants are employees of KSP and are therefore state employees. Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment acts as a bar to claims for monetary damages against state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claims against Defendants must be dismissed for failure to

state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from such relief.

The Court notes that Plaintiff alleges in the complaint that the KDOC should be held "jointly liable" under several of his claims. However, he does not name the KDOC as a Defendant. Even if he had, however, the KDOC cannot be held liable for money damages under § 1983. A state and its agencies are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Additionally, the Eleventh Amendment acts as a bar to all claims for relief against the KDOC. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004); *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).

**B. Individual-capacity claims**

**1. Conditions of confinement**

Plaintiff asserts that he was housed in the "Death Cell" which was unsanitary and dirty and had no water supply. He also maintains that he was given only a pair boxers and that his mattress was unsanitary. He alleges that these conditions violate the Eighth Amendment.

The Eighth Amendment requires that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "Extreme deprivations are required to make out a conditions-of-confinement claim" under the

Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

In order to state a claim for damages under the Eighth Amendment, an inmate must allege actual harm, or at least a serious risk of harm, by the condition in question. *See, e.g.*, *Benjamin v. Fraser*, 343 F.3d 35, 51 n.17 (2d Cir. 2003) ("To establish the deprivation of a basic human need . . . an inmate must show 'actual or imminent harm.'") (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). Mere exposure to unsanitary conditions does not state a claim for damages unless the harm actually occurs. *Brown v. Timmerman-Cooper*, No. 2:10-cv-283, 2013 U.S. Dist. LEXIS 14777, at *7 (S.D. Ohio, Feb. 4, 2013), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 47960 (S.D. Ohio, Apr. 2, 2013). Absent "'a severe or prolonged lack of sanitation constituting an infliction of pain within the meaning of the Eighth Amendment'" an inmate has no claim for damages based upon unsanitary living conditions. *Id*. (citation omitted). Further, Plaintiff may not recover damages for mental or emotional injury without a showing of physical injury. *See* 42 U.S.C. § 1997e(e); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) ("[A] claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities,' that is the touchstone of a conditions-of-confinement case."); *Pryor v. Cox*, No. 97-3912, 1999 U.S. App. LEXIS 32518, at *3 (6th Cir. Dec. 13, 1999) (finding plaintiff's claim of being subjected to bad food, unsanitary conditions, and excessive heat without also claiming he had suffered any physical injury as a result of these conditions was meritless); *Jennings v. Weberg*, No. 2:06-CV-235, 2007 U.S. Dist. LEXIS 1441, at *3 (W.D. Mich. Jan. 8, 2007) (collecting cases). Furthermore, since filing his complaint, Plaintiff has been transferred

to another facility. Therefore, he is under no continuing threat of physical injury from the alleged conditions.

As Plaintiff does not allege that he suffered any physical injury from the conditions of the "Death Cell," his Eighth Amendment claims will be dismissed for failure to state a claim upon which relief may be granted.

### 2. Abusive language

Plaintiff alleges that several Defendants subjected him to racial slurs and verbal abuse. The Eighth Amendment proscribes punishments which involve the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). However, harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d at 954-55; *see also Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 118217, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, *racial slurs*, or verbal harassment by prison officials.") (emphasis added).

Accordingly, Plaintiff's claims of racial slurs and abusive language by Defendants will be dismissed for failure to state a claim upon which relief may be granted.

### 3. Violations of KDOC policies and procedures

Plaintiff alleges numerous violations of KDOC policies and procedures. However, the failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *Smith v. City of Salem*,

*Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation."); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (rejecting inmate's argument that prison failed to follow Michigan prison regulations in putting him in segregation). Therefore, even if Defendants violated KDOC policies and procedures, which this Court need not determine, such does not give rise to a constitutional violation.

Therefore, any claim based on Defendants' alleged violation of KDOC policies and procedures will be dismissed for failure to state a claim.

### 4. Examination of restraints

Plaintiff alleges that Defendant Switzer failed to properly examine his ankle and wrist restraints and that his ankles and wrists were swollen. To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. at 835 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). A deliberate indifference claim has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). The subjective component requires that the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

Plaintiff fails to meet the objective component because he has not established that he suffered from a sufficiently serious medical need. He states only that his wrists were swollen. He does not allege that he incurred any ongoing problems with his wrists or that he required any

10

additional medical treatment for it.  At most, Plaintiff has alleged a *de minimis* injury.  *See, e.g.*, *Jarriett v. Wilson*, 162 F. App'x 394, 401 (6th Cir. 2005) (holding that swelling, pain, and cramps in legs was only *de minimis*); *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001) (holding pain, swelling, and bruising to prisoner's hand were *de minimis*); *Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir.1998) (finding swelling in the jaw, abrasions to wrists and ankles, and tenderness over some ribs to be *de minimis*); *Fuller v. Cocran*, No. 1:05-cv-76, 2005 U.S. Dist. LEXIS 41026, at *14, n.3 (W.D. Tenn. July 27, 2005) (finding the plaintiff's pain from slightly bleeding wrists from handcuffs was *de minimis* injury); *Luong v. Hatt*, 979 F.Supp. 481, 485 (N.D. Tex. 1997) (finding minor abrasions on forearm and chest, slight swelling of the jaw, swollen wrist, cuts on face and tongue, and a bloody nose were *de minimis*).  Therefore, Plaintiff fails to state a deliberate indifference claim related to the examination of his restraints.

Plaintiff also appears to allege a state-law negligence or malpractice claim against Switzer based on her examination of his restraints.  However, to allege such a claim, Plaintiff must show:  (1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury.  *See Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992) (citing *Illinois Central R.R. v. Vincent, Ky.*, 412 S.W.2d 874, 876 (1967)).  Because he has alleged no more than a *de minimis* injury, Plaintiff cannot state a negligence or malpractice claim against Switzer based on her examination of his restraints.

Accordingly, Plaintiff's claims against Defendant Switzer for failure to examine his wrist and ankle restraints will must dismissed for failure to state a claim upon which relief may be granted.

11

### 5. Denial of grievance

Plaintiff also makes allegations against Defendants Belt and Spindler concerning the handling of his grievance. To the extent that Plaintiff is suing them based on their denial of his grievance, his claims fail. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation.").

Therefore, Plaintiff's claims concerning the denial of his grievance will be dismissed for failure to state a claim upon which relief may be granted.

### 6. Retaliation

Plaintiff alleges that Defendants Belt and Spindler retaliated against him for filing lawsuits against them by prolonging the grievance process. <u>Upon review, the Court will allow retaliation claims to proceed against Defendants Belt and Spindler in their individual capacities</u>.

### 7. Placement in "Death Cell"

Plaintiff maintains that he was placed in the "Death Cell" in violation of the Due Process Clause and states that Defendant Coonts is liable for housing him there. <u>Upon review, the Court</u>

will allow Plaintiff's claim that he was placed in the "Death Cell" in violation of the Due Process Clause to proceed against Defendant Coonts in his individual capacity.

    **8. Excessive force**

Finally, Plaintiff alleges that his Eighth Amendment rights were violated when he was pepper sprayed without cause, dragged from and back to his cell, and put in a shower to decontaminate him. Upon review, the Court will allow Plaintiff's claims of excessive force and/or deliberate indifference to safety under the Eighth Amendment to proceed against Defendants Coonts, Inglish, and Switzer in their individual capacities based on his allegations concerning the use of pepper spray, the handling of the effects of the pepper spray, and the removal from his cell.

Plaintiff also states that the members of the Apprehension Team should be held liable for these claims. He does not name any of these unknown individuals as Defendants but makes reference to later amending his complaint to add these individuals. Therefore, the Court does not construe the Apprehension Team members as Defendants at this time. Should Plaintiff learn their identities, he may make a motion to amend the complaint.

### IV. ORDER

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that all official-capacity claims and Plaintiff's individual-capacity claims concerning the conditions of his confinement, abusive language, examination of his restraints, and denial of his grievances are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and/or for seeking relief from a defendant who is immune from such relief.

The Court will enter a separate Order Regarding Service and Scheduling Order to govern the claims that have been permitted to proceed. In allowing the claims to proceed, the Court passes no judgment on their outcome or ultimate merit.

Date:




cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.010